UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CADDY PRODUCTS, INC., | Civil No. 05-301 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| GREYSTONE INTERNATIONAL, INC., | **MEMORANDUM OPINION AND ORDER** |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| VISTEON GLOBAL TECHNOLOGIES, INC., | |
| Third-Party Defendant. | |

---

Dyanna L. Street and Richard G. Jensen, **FABYANSKE, WESTRA, HART & THOMSON, P.A.,** 800 LaSalle Avenue, Suite 1900, Minneapolis, MN 55402, for plaintiff Caddy Products, Inc.

Allen W. Hinderaker, Anthony R. Zeuli, and Rebecca A. Bortolotti, **MERCHANT & GOULD PC**, 80 South Eighth Street, Suite 3200, Minneapolis, MN 55402, for defendant and third-party plaintiff Greystone International, Inc.[1]

Martin R. Lueck, Thomas C. Mahlum, and A. L. Brown, **ROBINS KAPLAN MILLER & CIRESI LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for third party-defendant Visteon Global Technologies, Inc.

---

[1] Greystone International, Inc. was formerly represented by Kathleen Loucks, Gislason & Hunter LLP, Hopkins, Minnsota.

## BACKGROUND

The underlying dispute in this case is a patent infringement action filed by Caddy Products, Inc. ("Caddy") against defendant Greystone International, Inc. ("Greystone"), in which Caddy alleges that Greystone's movie theater armrest infringes Caddy's patent rights. Greystone purchased the allegedly infringing armrest from Visteon Global Technologies ("Visteon") in a Purchase and Sale Agreement ("Purchase Agreement") on June 10, 2002. Pursuant to that agreement, Greystone acquired Visteon's business related to the design, manufacture and sale of seating for public venues, including the armrest at issue in this lawsuit. The Purchase Agreement contained representations that Visteon had good title to the armrests, and that no claims had been made or threatened related to the armrests. The Purchase Agreement also contained an indemnification provision.

After Caddy sued Greystone, Greystone sought indemnification from Visteon, but Visteon refused. Greystone then served a third-party complaint against Visteon.[2] In Greystone's complaint against Visteon, Greystone alleges that in 2000, two years prior to the Purchase Agreement, Caddy informed Visteon that it considered Visteon's armrests to infringe Caddy's patent rights. Caddy did not, however, initiate a lawsuit against Visteon. Later, during the course of the negotiation of the armrest sale to Greystone, Visteon did not disclose Caddy's opinion to Greystone, despite representations in the Purchase Agreement that no claims had been made or threatened against the armrests.

---

[2] Greystone served both a third-party complaint and an amended third-party complaint (collectively, the "complaint") against Visteon. *See* Docket Nos. 50, 67.

The first time that Greystone learned of Caddy's opinion regarding the armrests was when Caddy brought this patent infringement lawsuit against Greystone.

## ANALYSIS

**I.      Standard Of Review**

Visteon moves to dismiss Greystone's complaint, or in the alternative, moves to stay the case pending arbitration. In a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff and presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). The Court may dismiss a claim only where the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002). A court ruling on a motion to dismiss may consider "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings," such as a contract to which all parties agree. *Haley v. AIG Life Ins. Co.*, 2002 WL 417419, at *2 (D.N.D. Jan. 24, 2002); *see Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Here, Visteon brings its motion to dismiss based on the terms of the Purchase Agreement, a contract to which the parties agree, and which is part of the public record. *See* Docket No. 58 (copy of Purchase Agreement). Therefore, the Court relies on the Purchase Agreement in ruling on Visteon's motion to dismiss.

## II.     Purchase Agreement

Greystone asserts two causes of action against Visteon.  First, Greystone seeks specific performance of the Purchase Agreement, requiring Visteon to indemnify Greystone for costs incurred in connection with the underlying lawsuit.  Second, Greystone alleges that Visteon committed fraud with respect to the Purchase Agreement.  Visteon moves to dismiss Greystone's claim for indemnity, and moves for an order staying Greystone's fraud claim pending arbitration of that claim.

The parties agree that, under the terms of the Purchase Agreement, Michigan law controls.  Like most jurisdictions, Michigan law provides that, in construing the terms of an agreement, the court is obligated to give effect to the intent of the parties as expressed by the plain language of their written agreement.  *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 550 (Mich. 2005).  Where the contract language is clear and unambiguous, its meaning is a question of law for the court to decide.  *Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996).

### A.     Indemnification

Greystone seeks indemnification from Visteon for costs associated with this litigation based on breach of the representations contained in Section 8.3 and Section 8.4 of the Purchase Agreement.  In Sections 8.3 and 8.4, Visteon represented that it had good title to the armrests, and that no claims had been made or threatened against them.

The Purchase Agreement contains an indemnification provision in Section 15.2.  The Purchase Agreement provides that the indemnification provision is the "sole

remedy" with respect to any claims relating to the subject matter of the Purchase Agreement, such as claims for breach of representations contained in the Purchase Agreement, except for claims based upon fraud and claims for which money damages are not an adequate remedy. Purchase Agreement, § 15.4. Claims based upon fraud are not, therefore, subject to the "sole remedy" of indemnification, and the Court addresses Greystone's claims of fraud below.

Although the indemnification provision the sole remedy for claims of breach of representations, by its terms, the indemnification provision is only available for losses arising out of the breach of representations contained in Sections 8.1 through 8.3 of the Purchase Agreement:

> [T]he following Section 15.2 [indemnity provision] shall have no application whatsoever to the representations and warranties contained in this Agreement other than with respect to the representations and warranties contained in Sections 8.1-8.3.

Purchase Agreement, § 15.1. In addition, the Purchase Agreement contains a limitations period, providing that all claims relating to those representations and warranties terminates two years after the Closing Date of the Purchase Agreement:

> The representations and warranties contained in Sections 8.1-8.3 and Sections 9.1 and 9.2, and all claims with respect to such representations and warranties hereunder, shall terminate upon the expiration of two (2) years following the Closing Date.

Purchase Agreement, §15.1.

Greystone seeks indemnity based on breach of Visteon's representations in Section 8.3 and 8.4 of the Purchase Agreement. In ruling on Visteon's motion to dismiss,

the Court must determine whether the language of the Purchase Agreement is clear and unambiguous.  *See Port Huron*, 550 N.W.2d at 237.

The Court finds that the language of the Purchase Agreement is clear and unambiguous, and holds that, based on the terms of the Purchase Agreement, Greystone's claim for indemnity fails as a matter of law.  With respect to Greystone's claim for indemnity based on breach of the representations contained in Section 8.4, the Court finds that indemnity is not available because the Purchase Agreement expressly states that indemnity is only available for losses arising out of the breach of representations contained in Sections 8.1 through 8.3.

AS to Greystone's claim for indemnity based on Section 8.3, the Court finds that indemnity is not available, because Greystone's claim is outside the two-year limitations provision in Section 15.1.  Under that section, Greystone's ability to assert a claim for indemnity based on Section 8.3 expired two years after the Closing Date of the Purchase Agreement.  The Closing Date of the Purchase Agreement was June 12, 2002, and the two-year limitations period therefore ended on June 12, 2004.  Greystone did not assert this claim until October 13, 2005.  Accordingly, Greystone's claim for indemnity based on Section 8.3 is not timely under the terms of the Purchase Agreement, and must be dismissed.

### B.     Fraud

Greystone also alleges that Visteon committed fraud with respect to the Purchase Agreement.  Greystone alleges that Visteon fraudulently represented in the Purchase

Agreement that it had good title, "free and clear of all Encumbrances" to the armrests, and that there were no "threatened" claims against the armrests, when in truth, Visteon knew that Caddy had alleged that the armrests infringed its patent rights. Purchase Agreement, §§ 8.3, 8.4. Visteon moves to dismiss Greystone's fraud claim, or in the alternative, to stay the fraud claim pending arbitration, based on an arbitration provision in the Purchase Agreement.

As evidenced by the Federal Arbitration Act, there is a strong federal policy in favor of enforcing arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983). If claims are arbitrable under the Federal Arbitration Act, the claims must be referred to arbitration, and the judicial proceedings must be stayed pending that arbitration. *See id.*; 9 U.S.C. §§ 2, 3. In determining whether a claim is arbitrable, the court must first decide whether a valid agreement to arbitrate exists between the parties, and then decide whether the specific dispute falls within the scope of that agreement. *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994). In engaging in the inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 992 (D. Minn. 1999).

Here, Section 17.10 of the Purchase Agreement states that "any dispute" arising out of the Purchase Agreement shall be submitted to arbitration, except for actions for specific enforcement:

> Each of the parties agrees that any dispute, controversy or claim arising out of or in connection with this Agreement or any Related Agreement or any alleged breach hereof or thereof that is not resolved by negotiation as

> provided in Section 17.11(a) shall, upon ten (10) days' prior written notice from one party to the other of its intent to arbitrate, be submitted to and settled exclusively by final and binding arbitration in Southfield, Michigan, before a panel of three arbitrators, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). . . . Notwithstanding anything to the contrary in this Section 17.11(b), no party shall be precluded from seeking or obtaining from a court of competent jurisdiction (i) injunctive relief or (ii) equitable or other judicial relief to specifically enforce the provisions of this Agreement and the Related Documents or to preserve the status quo ante pending resolutions of disputes hereunder or thereunder.

Purchase Agreement, § 17.10(b). The Court finds that Section 17.10 is clear and unambiguous, and that Greystone's fraud claim must be submitted to arbitration. First, the parties do not dispute that the Purchase Agreement contains an agreement to arbitrate, and that the agreement is valid. Second, Greystone's fraud claim is plainly encompassed by the language "any dispute, controversy, or claim arising out of or in connection with" the Purchase Agreement. In addition, unlike Greystone's claim for indemnity, Greystone's fraud claim does not fall into the exceptions to the arbitration requirement.[3] Finally, enforcing Section 17.10 is consistent with the strong policy in favor of enforcing arbitration agreements.[4]

---

[3] *Cf.* Purchase Agreement, § 17.10(b)(i)-(ii). As set forth above, Greystone's claim for indemnity is an action for specific performance of the Purchase Agreement, and therefore is not subject to the mandatory arbitration provision in Section 17.10.

[4] Greystone offers only two arguments opposing enforcement of the arbitration provision. First, Greystone contends that arbitration should not be compelled, because it would be "inefficient" to litigate claims both in arbitration and in court. This argument has been rejected. *See Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 217 (1985) (holding that the Federal Arbitration Act requires arbitration of arbitrable claims, even though that may result in the "inefficient" maintenance of separate proceedings in different forums). Second, Greystone cites to *All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp. 2d 825, 829 (D. Minn. 1999), a case in which the court denied a motion to stay the case pending arbitration. *All Saint's*

(Footnote continued on next page.)

- 9 -

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Visteon's Motion to Dismiss Third-Party Complaint [Docket No. 55] and Visteon's Motion to Dismiss Greystone's Fraud Claim or, in the Alternative, to Stay [Docket No 76] are **GRANTED in part and DENIED in part** as follows:

1. Greystone's claim for indemnification by Visteon is **DISMISSED with prejudice**;

2. Greystone is **ORDERED** to submit its fraud claim to arbitration in accordance with the Purchase Agreement; and

3. All further proceedings with respect to Greystone's fraud claim are **STAYED PENDING ARBITRATION**.


DATED: August 17, 2006  　　　　　　　s/ John R. Tunheim_
at Minneapolis, Minnesota. 　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　United States District Judge

---

(Footnote continued.)

*Brands*, however, is not analogous to the instant case. That case involved unique circumstances not present here, including the court's finding that staying the case pending arbitration would have been prejudicial to parties to the litigation who were not parties to the arbitration agreement.